[No. 23119. Department One. August 5, 1931.]

WILLIAMS FISHING COMPANY, *Appellant*, v. CLARK V. SAVIDGE, *as Commissioner of Public Lands, et al., Respondents.*[1]

*Welsh & Welsh,* for appellant.

*The Attorney General* and *L. B. Donley, Assistant, Kelly & MacMahon,* and *G. C. Fulton,* for respondents.

MAIN, J.—This action was brought by the plaintiff to restrain the defendant, the state commissioner of public lands, from leasing certain tide lands, owned by the state, and situated at or near the mouth of the Columbia river. The cause was tried to the court without a jury, and resulted in a judgment dismissing the action, from which the plaintiff appeals.

There has been a prior trial of the action, and a prior appeal. In the Departmental opinion (152 Wash. 165, 277 Pac. 459) on that appeal, the facts will be

[1]Reported in 2 P. (2d) 722.

found more fully stated. After the opinion of the Department was filed, a rehearing was granted, and the cause was heard *En Banc* (155 Wash. 443, 284 Pac. 744). In the *En Banc* opinion, it was directed that the judgment be reversed, and the cause be remanded for a new trial. As already stated, the present appeal is from the judgment of dismissal entered by the superior court after the second trial.

Sections 1 and 2 of the Laws of 1901, ch. 110, p. 225, are as follows:

"Section 1. That the shore and beach of the Pacific ocean, including the area or space lying, abutting or fronting on said ocean and between ordinary high tide and extreme low tide (as such shore and beach now are or hereafter may be) from the Columbia river or Cape Disappointment on the south to a point three hundred feet southerly from the south line of the government jetty on Peterson's Point, state of Washington on the north, be and the same are hereby declared a public highway forever, and as such highway shall remain forever open to the use of the public.

"Sec. 2. No part of said shore or beach shall ever be sold, conveyed, leased or otherwise disposed of."

It will be noticed that the southern terminus of the public highway therein provided for shall be at the Columbia river or Cape Disappointment. This cape is at the southwest corner of the state of Washington, and is a body of land of some size. Immediately to the south or southeast is what is called Peacock spit, which formerly was an island. Upon the former appeal, it was held that the southern terminus of the highway would be at a point at the southern end of the cape where the waters of the river flowing to the west meet the shore and beach of the Pacific ocean, and this point would be at the southern extremity of the cape, or at the southern extremity of Peacock spit if, by accretion, the two bodies of land have become

one, and the spit has, by that means, become a part of the cape. Whether the spit has become a part of the cape depends upon whether between the spit and the cape there is a channel which, at extreme low tide, is covered with water. If there is such a channel, then the highway ends at the southern extremity of the cape, where the waters of the river meet the waters of the ocean. If, at extreme low tide, there is no channel which is covered by water, then the highway extends to the southern extremity of the spit, where the waters of the river meet the waters of the ocean.

This presents purely a question of fact. The appellant's evidence, if accepted, would establish the fact that there is no channel between the cape and the spit which, at extreme low tide, is covered by water. If the testimony of the respondents' witnesses is to be accepted, then between the cape and the spit there is a channel of some size which, at extreme low tide, is covered with water. The trial court, either at the request or with the approval of the parties, after hearing the testimony, and before rendering a decision, visited the spit and the cape, and thereafter wrote a memorandum decision, which in part is as follows:

"The physical facts on the ground, as detailed by the various witnesses, government records consisting of maps and plats, the numerous photographs taken of the location, together with the very careful view of the premises by the court, lead to the following conclusions as to the facts:—

"Cape Disappointment is a high rock promontory breaking precipitately down to the ocean on the west and the river on the south, or the southeasterly side, and I think undoubtedly at one time was the point where the river following through natural banks reached the ocean. Some accretions have formed extending the shore land south and easterly from the rock formation.

"It clearly appears that Peacock spit, as shown by the government charts, in its original formation and first appearance was an island, entirely and completely separated from the main land of the cape. The charts show a changing formation by accretions, both of the island and the rocky point of the cape until at one time some years ago, and for a period of about two years they joined, and there was a continuous sand formation from the cape proper to the southeast point of the island at extreme low tide, but thereafter channels were washed between the island and the cape and have at all times since and now separate Peacock spit from the cape proper.

"Considerable evidence was introduced at the time of the trial to prove, or disprove the fact that there was a continuous strip of shore lands from the rock cape to the southeast end of the spit, and the court paid particular attention to this feature of the case when making the view. There can be no question but at the present time, and for several years last past, there is and has been a channel or channels of water separating the outer formation from the mainland of the cape.

"Having in mind one of the rules laid down by the supreme court, the trial court was landed from a launch near the fish sheds of the Baker Bay Fishing Co. on the south portion of Peacock spit and traveled northerly toward the cape to determine whether a traveler landing at that point could enter immediately upon the highway. This view was made at or about extreme low tide and the inspection disclosed that the sand formation, over an area covering the greater distance, was of a shifting, uneven nature, forming swirls and pockets, with some portions projecting above the water, and the next step a hazard of pockets filled with water over the boot tops, and upon approaching a point, several hundred yards from the cape proper, a channel of a hundred feet or more obstructed the progress. Through the channels the swells from the ocean were beating and flowing and the party was obliged to wait the coming of a boat to take them across. This confirmed the statement of the defendants' witnesses

to the effect that there was a channel obstructing progress on foot from the spit to the cape.

. . . . . . . .

"It seems to me that it must be conceded that the point where the waters of the Columbia river (considering the definition of a river as the 'natural stream of water flowing betwixt banks or walls in a bed of considerable depth and width, being so-called whether its current set always one way or flows and reflows with the tide') lave the shores of the southern point of Cape Disappointment, is at the southern point of that cape as extended by the accretions to the cape, which is at a point north of the channel referred to.

. . . . . . . .

"I, therefore, find:—

. . . . . . . .

"(2) That the waters of the Columbia river now reach the shore and beach of the Pacific ocean at the southern point of the accretions to the rock formation of Cape Disappointment, north of the channel which cuts through the spit. . . ."

The trial judge, having seen and heard the witnesses, and visited the cape and spit, was in much better position to weigh the testimony than are we from simply a consideration of the record.

After considering the testimony, we are unable to say that the court was in error in finding that Peacock spit has not become a part of Cape Disappointment. It is true that no formal findings of fact and conclusions of law were made, but the views of the court are set forth in a carefully prepared memorandum opinion.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MILLARD, JJ., concur.